ELLIS, Judge.
Plaintiffs, husband and wife, are seeking damages for injuries allegedly suffered in an automobile accident which occurred on December 24, 1953, at approximately 8 P.M. on blacktopped highway 71. Kinchen Bridges was driving his automobile in which his wife and brother-in-law were riding as his guests several miles west of Kentwood, Louisiana, going in a westerly direction, and just as he came over the crest of a hill and had gone approximately 30 to 50 feet, he collided with the pickup truck, either parked or moving slowly, being driven by and belonging to the defendant, Virgil J. Hammons. In the pickup truck at the time was the wife of Hammons and their two minor children.
The case was tried by jury and resulted in a judgment in favor of plaintiff, Kinchen Bridges, in the amount of $8,488.65, and in favor of Mrs. Lorena Lee Bridges, his wife, in the amount of $9,000.
Upon a refusal by the trial judge of a new trial an appeal was taken to this court which has been answered by the plaintiffs seeking an increase.
Counsel for the defendants base their appeal upon the proposition that the plaintiffs have failed to carry the burden of proof of negligence on the part of the defendant Hammons; also that the plaintiff Kinchen Bridges was guilty of contributory negligence barring his recovery, and further that the monetary awards in favor of the plaintiffs were grossly excessive in the light of their testimony and of the medical evidence offered in their behalf.
The record reveals that plaintiff and his wife, who were living in New Orleans at the time, had come to visit their relatives, most of whom lived in Tangipahos and St. Helena Parishes, and upon hearing that their brother-in-law was drinking went to look for him, found him and had left Kent-wood traveling in a westerly direction on Highway 71, which is a blacktopped road approximately 18 feet wide running through hilly country.
It is shown that Kinchen Bridges, the driver of the car, was perfectly sober and, as far as the record reveals, had not had anything to drink, although it is admitted that the brother-in-law was very much under the influence of liquor. He was not injured in the wreck. Both plaintiffs testified very positively under direct as well as cross examination that just prior to the wreck they went up a hill and at no time did they see any lights from an approaching automobile, but' that just as they went over the crest of the hill and started down, bright lights came on from a vehicle which they believed to be parked in the center of the highway, but which they admitted could have .been moving slowly. *143 Kinchen Bridges stated, however, that just a split moment before the lights came on he saw the parked automobile and at the same time the lights came in his eyes blinding him but that the truck was parked in the center of the highway or possibly could have been moving slowly. These witnesses believed that this truck was parked and just as they came over the crest of the hill the defendant Hammons turned on his lights.
On the other hand the defendant Ham-mons and his wife both testified that they were moving east on the highway with their lights on in their right lane of travel just prior to and at the time of the collision, however, it is very strange that the defendant Hammons testified that he never did see the plaintiff’s car until after it struck and was on its side some 200 feet down the hill. Mrs. Hammons also stated that she did not see the car until the collision. The defendant Hammons attempts to explain this by the fact that he had purchased two bicycles earlier in the afternoon at a store in Baton Rouge for his two children and that at the time of the collision he was talking to them and warning them about riding their bicycles in the street. There is no doubt that he was in a conversation with the children at the time because he later told one of plaintiff’s witnesses the same story. His explanation of why he did not see the plaintiff’s car until after the accident was over was as follows:
“It could have been at that particular time like I told you before. I was talking to my children, warning them about how to ride their new bicycles, not to ride in the street, and so forth, and it could have been I turned my head to look at them at the exact moment the accident occurred.”
The testimony of witnesses offered by the plaintiffs is most convincing that the defendant Hammons was intoxicated prior to and at the time and subsequent to the wreck. He and his wife deny this but Hammons admits that he had approximately five or six drinks at the store when he bought the bicycles before he ever left Baton Rouge. Then at or near Morris Easley’s store which is located west of Kentwood he either ran head-first into the ditch or, as he said, missed the road and in attempting to turn backed into the ditch, however, the colored man who pulled him out with his pulpwood truck testified that he was drinking and that Hammonds’ wife told him not to pay any attention to Hammons, that he was drunk. This witness also testified that Hammons’ truck was headfirst in the ditch, whereas both Hammons and his wife say that the truck backed into the ditch. It is also shown by the testimony that the wife walked back to Easley’s store to get help to get them out of the ditch instead of the husband doing this. She attempted to explain this by stating that he was trying to get the truck out, but in view of the testimony that he was intoxicated we believe that she went instead of him for that reason. The store owner also testified that after Hammons had been pulled from the ditch he came by his store, stopped and offered him a drink of whiskey, dropped the bottle, which Easley picked up and gave back to him after refusing a drink. Easley testified that Hammons was intoxicated.
Witnesses at the scene of the wreck testified that he had been drinking and his wife stated that at that time he was tight. The explanation for this was that some unknown man in the crowd gave him the drinks after the accident. The State Trooper who investigated the accident testified that Hammons was drinking and he asked him about it and Hammons told him that some man in the crowd whom he did not know and had never seen had given him the whiskey. The State Trooper never located this man.
The physical facts show that the pickup truck ended up on its side with its front end northwest and the rear end southeast, about % of the front of the truck being over the center of the highway and in the north lane, and % remaining in the south lane. The debris such as glass and dirt *144 was scattered around the center of the road and some on the north side, however, this is not sufficient to relieve the defendant Hammons of negligence in the face of the direct testimony of the plaintiffs as well as his own to the effect that he and his wife never even saw the approaching car.
The State Trooper stated that to the best of his knowledge from the debris the accident occurred about the center of the road.
After a careful consideration of all the testimony we believe that this accident occurred as testified to by the plaintiffs and was due to the negligence of the defendant Hammons. The judgment of the jury fixing liability upon the defendants in this case is not manifestly erroneous to say the least.
As to the quantum, we believe it is excessive. The evidence shows that Mr. and Mrs. Bridges were moved to the Hospital at Magnolia where they remained for six days. Neither suffered any broken bones or fractures of any kind. Mr. Bridges, according to his history, was unconscious for a short period of time, possibly about 30 minutes. He had a laceration of the face, which required a few stitches. He complained of severe pain in his neck, shoulder and back down to his waist line, and Dr. Hyde of the Magnolia Hospital stated that he was in severe enough pain to require a hypodermic injection. This doctor stated that the laceration was of minor significance, however, the contusions and bruises were severe enough in his back that he developed an abdominal distension- that was relieved by the insertion of a tube and suction. This condition continued for three or four days. Both he and Mrs. Bridges were discharged on the sixth day after their admission. Dr. Hyde examined Mr. Bridges again the latter part of February. He complained of pain in his neck and shoulder and back. The doctor found upon physical examination a good deal of pain and limitation of motion when he turned his head to the left, also much tenderness -of both shoulder blades and the spinus process from the cervical region, which is in the neck, down through the lower thoracic region. X-rays taken at the time of admission revealed arthritis in his spine. He was not x-rayed again on the second visit.
It was the opinion of this doctor that arthritic conditions are aggravated by severe trauma, that the history from the patient is the main thing that a physician can go on in evaluating the condition. It was his opinion with the physical findings and the history that the arthritic condition of Mr. Bridges’s back had been aggravated by the trauma.
After the February visit to the Magnolia Hospital for re-examination Mr. Bridges returned to New Orleans and his employment. He was classified as a boiler-maker or boiler-maker’s helper in the union and according to the record he lost no time other than the dates of his hospitalization. There is some testimony by the head of the union that it was his job to know what each man was doing and whether he was able to work, and that Kinchen Bridges could not climb as he had prior to the injury. This testimony is not of too much value in view of the fact that although it was most positive in stating that it was his business to know the condition of his men and when they were off from work, that Bridges had an operation for hemorrhoids which he had never even heard of and, of course, during this time Bridges was unable to work. There is nothing in the record that Bridges lost any money or any time. The only testimony is his own that he was in pain and was unable to climb and, therefore, took lighter work, although presumably he received the same pay.
Approximately seven months after the accident Bridges received a deep wound and laceration of the arm which is in no way connected with his claim in this case, but as a result of being cut he went to see Dr. Maher of New Orleans. Bridges then complained of his back as a result of the accident and this doctor began treating him. *145 Mrs. Bridges was sent to this doctor for ■ treatment which she claimed was necessary as a result of the accident. Dr. Maher, of course, did not know the condition of Bridges’ back prior to the accident nor at the time of the accident but from his examination he concluded that the arthritic condition had been aggravated as a result of the trauma received in the accident.
Mrs. Bridges, according to Dr. Hyde of the Magnolia Hospital, was not as seriously injured as her husband. She had multiple contusions of her back and body and knees and some four hours after admission to the hospital or the night of December 24, 1953, she became nauseated and the vomiting persisted for about three days. She was discharged along with Mr. Bridges on the sixth day and returned with him in February of 1954, and at that time still had some complaint of pain in her left scapula region and pain on moving her knees. Dr. Hyde stated that during the February visit Mrs. Bridges stated that she had no pain prior to the accident and he therefore concluded that the trauma aggravated an arthritic condition in her back and knees. Both doctors testified that the arthritic condition of Mr. and Mrs. Bridges was existent at the time of the accident and was not in any way brought on as a result of any injury, but due to their complaints after the collision that they believed that the condition had been aggravated. Mrs. Bridges testified that she had pain on moving around and several months prior to the trial developed a limp.
While we have considered all the citations made by counsel for plaintiffs and defendants in their briefs on the question of quantum, each case must rest upon its own facts, and while some of them are similar, we see no need to detail them in our consideration of this case.
Simply stated, insofar as Mr. Bridges is concerned, we have a case in which a man approximately 49 years old with arthritis of the spine is injured in an automobile wreck and suffers rather severe bruises and contusions but no painful injuries such as fractures or dislocations; who remains in the hospital six days, during his hospitalization as a result of the nature of his injuries he suffered a distension of the abdomen which was very painful and persisted for three or four days; on the 6th day he was discharged, returned to New Orleans and during the latter part of February returned for another examination which did not reveal any serious after effects. The most serious was his complaints of pain in his back which the doctors believed was caused by an aggravation of the pre-existing arthritis. He then returned to New Orleans and went to work and considering all the testimony lost no time that he would not have ordinarily lost as a result of the accident. The testimony is not sufficient to show any permanent injury or, in fact, any severe aggravation of the arthritic condition so as to preclude him from doing the same work he was doing prior to the accident. The greatest amount of damage was due to the pain and suffering immediately after the accident and during the hospitalization. The fact that he had arthritis prior to the accident must be considered in fixing the damages for an aggravation of this condition.
Considering the facts in this case we believe that $5,000 would be a just award for his pain, suffering and any aggravation of his arthritic condition. The remainder of the award to him for medical expenses over and above his Blue Cross Hospitalization Insurance of $84.80 and for damages to his automobile of $403.85 is correct.
We believe that under the facts of this case an award to Mrs. Bridges for pain, suffering and any aggravation of a pre-existing condition which she might have suffered in the amount of $2,500 would be proper.
It is therefore ordered that the judgment of the District Court be amended by awarding to Kinchen Bridges the sum of $5,000 for pain and suffering and any permanent *146 ■ injuries in the nature of an aggravation of his pre-existing arthritic condition, and to Mrs. Kinchen Bridges the sum of $2,500 for any pain and suffering, mental anguish and any permanent injury in the nature of an aggravation of a pre-existing arthritic condition, and as thus amended the judgment be affirmed in all other respects.