LOTTINGER, Judge.
This is a tort action wherein the plaintiff, Ned C. Price, seeks to recover the sum of $10,405.75 from the defendant, Lewis S. *709 Doherty, II, and the latter’s liability insurer, the Fidelity & Casualty Company of New York, as damages resulting from a fall suffered by plaintiff on March 1, 1954, on a sidewalk abutting Doherty’s property in the city of Baton Rouge. The petition alleges that the fall occurred when plaintiff tripped on a roll of fence wire which had been negligently left on the sidewalk by one of defendant’s employees.
The defendants’ answer admits the insurance coverage but denies any negligence on the part of Doherty or his employees. It is further alleged that if the accident occurred it was caused solely by the negligence of the plaintiff and, alternatively, that the plaintiff was guilty of contributory negligence in failing to see or in seeing and failing to heed, the roll of fence wire which was easily discernible.
The Lower Court awarded damages to the plaintiff in the amount of $5,433.13 and the defendants have appealed. The plaintiff has answered the appeal asking that the award be increased to the amount originally prayed for.
The trial judge rendered written reasons for judgment wherein he found, in part, as follows:
“Between Convention Street and Florida Boulevard in the same block as Fisherman James’ Restaurant there is a small canal in the place of Greta Street. There are trees and shrubbery along the canal and walkway. While the street is not open to traffic the concrete sidewalk is used by pedestrians. Defendant Doherty II owns the property abutting this concrete walkway on the east, which property was outlined by a wire fence constructed of mesh wire commonly referred to as chicken wire along the east side of the concrete walk. Melton Scott was an employee of Doherty for quite a number of years and on the day of this accident Scott was engaged in removing this wire from the posts. After it was removed Scott left the wire stretched out on this walkway and went off to lunch. Plaintiff has used this walk for several years every day and after Scott left this wire stretched along the walk plaintiff came along as was his custom en route to Fisherman James’ Restaurant for his lunch. Some one across the canal hailed the plaintiff. The plaintiff turned his head to answer the call and it was at this time that he stumbled on this wire which was lying on the walk. The plaintiff fell with considerable force to the concrete walk after stumbling several feet over the wire. In the fall plaintiff cut his knee, sprained his wrist and hurt his neck and back. After some minutes plaintiff went to Doherty’s office and together they came back to' the scene of the fall. After viewing the situation Doherty told the plaintiff to seek medical aid and stated to the plaintiff that he would reprimand his employee for leaving the wire as the employee left it. The fact that Doherty saw the wire in such a location that he thought it justified reprimanding his employee indicates to me that the wire was left in a dangerous position by the employee. The testimony and exhibits show this walk to be amongst trees and shrubbery of considerable density. The photographs were made on January 17, 1957. The accident happened on March 1, 1954. I assume that the leaves on the ground, the foliage and the shrubbery and trees were about the same condition on March 1, 1954, as shown by the photographs, which indihate that the walk was covered with leaves except in a narrow path along the center of- the walk. Therefore, the presence of this small mesh wire stretched out on that walk amongst the leaves and under the shadows of the shrubbery and trees would be almost imperceptible except by close scrutiny. Melton Scott says in some of his testimony that he left the wire rolled up in a roll about 14 inches in diameter, but he doesn’t know *710 where he left the roll. He contradicts himself in every particular and his testimony in this and all other respects is worthless. Doherty came there and saw the situation immediately after the accident, but he remembers nothing about it.
“Mr. Price says the wire was stretched out along the walk except on the end next to him where it was partly rolled to some 4 or 5 inches in diameter with the remainder stretched along the walk. It is not unreasonable to believe that Scott did start rolling it and then quit, or, it is possible that the end nearest Mr. Price was kicked up a few inches, but not rolled up in a tight roll. The size of the wire forming the mesh was very small and the presence of the shrubbery, trees and leaves formed a perfect trap into which the plaintiff walked and fell. Mr. Price was accustomed to travelling that walk daily and had the right to expect it to be safe and usable. Pie was not required to keep his eyes glued to the wa-lk in front of him at every step. Turning his head to answer the call while walking along a path which he was accustomed to use was not unreasonable and it does not constitute contributory negligence.”
The above findings are amply supported by the record. There is no question but that the chicken wire was negligently left on the sidewalk by Doherty’s employee, this even being admitted by counsel for defendants in his brief, thus leaving for consideration by us only the question of contributory negligence and quantum.
While there are many cases on the subject, we are of the opinion that the case of Merchant v. Montgomery Ward & Company, Inc., La.App., 83 So.2d 920, 923, decided by us, controls. In that case the well recognized principle was applied that:
“All that is required of a pedestrian upon a sidewalk is ordinary care and this does not necessitate his looking constantly where he is going. He has a right to assume the sidewalk is safe for travel, and where one sustains injuries by reason of an unsafe condition of a sidewalk, the burden to show that he was not using ordinary care, or contributed to such injuries by his own negligence, rests upon the corporation. Lemoine v. City of Alexandria, supra (151 La. 562, 92 So. 58), and cases cited thereunder.”
 The burden of proving contributory negligence rests upon the defendants and we do not believe that they discharged it. We believe, as did the trial judge, that the wire was virtually a trap and that the plaintiff was not negligent when he happened to turn his head and in so doing, fell onto it.
Coming now to the question of quantum, the trial judge held as follows:
“ * * * Mr. Price had no fracture or dislocation and I think his chief trouble was the aggravation of a preexisting arthritis in various parts of his vertebrae. It is difficult to determine exactly how to measure such aggravation. The cut on his knee and the sprain of his wrist were superficial and worthy of little note. Neither was sufficient to require any treatment whatever by Dr. Lobrano to whom Mr. Price went on the day of the accident.
“Mr. Price had arthritis to a considerable extent for quite a long period of time, but it had given him no trouble for a year or more prior to this accident. Shortly after his fall his neck and back began to give him trouble and after he went to Dr. George he spent about a week in the hospital in traction. After he left the hospital he continued to use this traction about three weeks continuously. After that time he used the traction for about three and a half months at night only. He could not drive his car for over 9 *711 months and was not able to operate his lawn mower or to do any of the household chores for about 14 months. During all of this time he suffered considerable pain and disability. The pain has diminished and it is only occasionally now that his suffering recurs to the extent that it is necessary for him to wear a steel brace or corset to support his back.
“Inasmuch as he had not been bothered with the pain for more than a year prior to the accident, it is reasonable to assume that he could have continued in his sedentary routine without pain or disability. Therefore, it is fair to conclude that his back ailment was aggravated by the fall to the extent explained by him and Dr. George. This type of award is the most difficult to appraise. There is no pattern. Mr. Price has the appearance of a retired businessman of intelligence and integrity and in my opinion he made no attempt to exaggerate his trouble. He impressed me favorably. Believing his suffering to date was caused by the fall and the fall was due to the negligence of Mr. Doherty’s employee, the defendants should pay some reasonable amount. I think $5,000.00 would be the amount to which the plaintiff is entitled and judgment will be rendered in favor of the plaintiff for that amount, in addition to which the plaintiff is entitled to recover the following special damages:
“Bill of Dr. Malen, $75.00; Tic-Toc Shoe Company, $15.45; White-Gruen berg Company, for weights and braces, $10.90; Baton Rouge General Hospital, $69.50; Dr. I. L. George, $150.00; Baumann Surgical Supplies, $1.03; Snell’s Limbs, Braces, Inc., $51.50; Baton Rouge Mattress Factory, $9.75; Mrs. J. W. Hargroder, $50.00, or a total of $433.13.”
The factual findings of the Lower Court with respect to the plaintiff’s injuries are substantiated by the record and we do not find the damages awarded therefor either inadequate or excessive.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.