ELLIS, Judge.
This is a proceeding wherein the plaintiff seeks damages against the insurer of Jennings Joseph Tate for personal damages, sustained when struck by the automobile of the insured. A trial upon the merits resulted in a judgment in favor of the defendant insurer, dismissing the suit. From this judgment plaintiff has appealed.
Shortly before the accident upon which this suit is based the plaintiff, Delta Thomas, was riding along U. S. Highway 167 in Evangeline Parish, in his horsedrawn buggy with two acquaintances. This vehicle was struck from its rear and demolished by an automobile driven by one Malcolm Neal Fontenot. The plaintiff, as well as his companions, were thrown from the buggy and injured. Fontenot, after his car struck the vehicle in which plaintiff was traveling, drove farther along the road, turned his car completely around and returned to the scene of the accident, parking on the shoulder of the highway on the opposite side of the highway from the buggy, facing his vehicle toward the east. Its lights were left burning but it is not clear whether these lights were the head lights or the parking lights only. The evidence does not definitely establish whether there were any warning lights on the rear of the buggy, but after it was struck no lights, reflectors, or warning signals whatever were left on this horsedrawn vehicle.
*765 After Fontenot turned his car and parked on the opposite shoulder of the highway where the first accident occurred, an automobile driven by Jennings Joseph Tate, proceeding westerly, came approximately abreast of the Fontenot car and the buggy wreck, when his automobile struck and injured the plaintiff.
The plaintiff contends he was helping Fontenot, the driver of the car which struck the buggy, to restrain the horse, which had been drawing it, from running away. His specific charges of negligence attributed to Tate are that he failed “to keep a proper look-out” and that he was “driving at an excessive rate of speed under the circumstances, completely disregarding the safety of others including petitioner, in failing to see all he should have seen and do what he should have done.” Contributory negligence was denied and, in the alternative, the “last clear chance” was plead.
The defendant denied any liability whatsoever, alleging the sole proximate cause of the accident was the gross negligence of the plaintiff in “not heeding the right-of-way of the approaching automobile; failing to keep a proper look-out” and “negligently and carelessly darting in front of the automobile.” In the alternative contributory negligence on the part of the plaintiff was alleged as being the proximate cause of the accident.
The record shows that when Tate first observed Fontenot’s automobile he did not know whether or not it was parked and he slowed his car. Tate testified that he did not see the buggy, what was left of it, or any debris on the road-way; that when he was proceeding through the space between the automobile and the wrecked buggy the plaintiff suddenly ran in front of his automobile and although he tried to cut his wheel, the plaintiff was struck and injured. The wrecked buggy at this time was facing west and was approximately two feet on the paved portion of the north or west lane of the highway. He stated it was impossible for him to avoid striking the plaintiff.
The plaintiff testified that after his buggy had been hit by Fontenot’s car he was left in a condition which he described as “lost, sort of dizzy or drunk after the first car hit me it kinda made me dizzy or drunk. Kinda turned my head, everything was sort of blurred but I saw the animal though, I wanted to catch the animal.” The trial court concluded in its written reasons for judgment that the plaintiff evidenced throughout his testimony he had his mind only on trying to catch his horse and that the plaintiff did not even look to see if any cars were approaching.
Fontenot testified that he was speaking to the plaintiff when Thomas suddenly left his side, just as Tate’s car came by and struck the plaintiff. The testimony of this witness reads:
“Q. Now, he just ran right in front of the other automobile. A. He left my side suddenly.
“Q. And the thud was simultaneous. A. That’s right.”
This testimony followed a statement by Fontenot that immediately after the plaintiff left his side he, as the approaching vehicle passed, heard a thud.
Apparently Tate’s automobile was being driven at the rate of about 45 miles per hour when he approached the scene of the accident, and that aside from the parked vehicle of Fontenot, there was nothing unusual to warn him of any emergency. Two State Highway Police Troopers testified there were no lights or reflectors on the wrecked buggy and that while there was some small trash on the highway there was not very much.
The plaintiff maintains there was debris strewn over the highway of such a nature as to reasonably cause Tate to notice it, and bring his car to a halt. The further position is taken that if Tate was negligent and the plaintiff also negligent then Tate had the “last clear chance” to avoid the accident. Also, it is urged that the “emer *766 gency doctrine” applies in view of the fact that a previous accident had occurred and the plaintiff had no apprehension of what was occurring.
The trial court found the plaintiff was not confronted with alternate perilous situations between which he was. compelled to choose and that under the facts the “emergency doctrine” did not apply. The lower Court also found that should it be assumed Tate was in any way negligent that plaintiff’s contributory negligence would bar. his recovery. This last conclusion was based upon the evidence which made it clear the plaintiff had as his first objective to catch and restrain his. horse, looked neither to the right nor left, and paid no attention to approaching • traffic. Our learned brother below was convinced, and so stated, that Tate “was proceeding at a reasonable rate of speed; that except for the lights on the car, properly parked on the shoulder of the highway, there was nothing to indicate any particularly unusual situation; that the debris from the broken buggy could not be clearly seen and that it -was relatively small in size and too scattered to alert a motorist to any unusual degree; that there was no advanced warning Tate would suddenly be confronted with a pedestrian directly in front of his head lights; that plaintiff, without warning, darted directly into the path of the approaching car; that there was-no chance to avoid hitting the plaintiff; that if Tate was in any degree negligent the plaintiff was certainly also negligent, in a greater degree, and that this contributory negligence must bar recovery.”
A careful examination of the record dictates our agreement with the decision.
Counsel for the appellant strenuously urges it is negligent for a driver of an automobile to proceed where he has been put upon notice of imminent danger in-which others have been placed. Brock v. Southern Farm Bureau Casualty Insurance Co., La.App., 94 So.2d 492 is. cited. This case holds a reasonably prudent njotorist may be'held negligent if he has the reasonable opportunity to observe a condition in his pathway and to evaluate the danger of the situation, and if he has the reasonable opportunity, through the use of ordinary care to avoid the accident and fails to do so. , This case is inapposite here since Tate never had such ah opportunity.
Equally not applicable is Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 and Norwood v. Buford, La.App., 83 So.2d 570. In the case at bar the plaintiff made', no mistake in any method he adopted during an emergency to -escape the .peril-. From all of the testimony he did not ’even- know a peril existed as he never saw the on-coming automobile.
The circumstances herein definitely do not allow any application of the doctrine of “last clear chance” or “discovered peril.” Tate the driver of the automobile which struck the plaintiff, was never made aware of any danger whatsoever to the - plaintiff as Thomas suddenly darted in front of his car. Nor could he have seen any peril upon the part of the plaintiff in time to avoid the accident no matter how well he was observing the highway.. We recently discussed at length the doctrine invoked here in Ballard v. Piehler, La.App., 98 So.2d 273, in refusing recovery where a pjaintiff suddenly stepped in front of an approaching vehicle. That case and the authorities therein cited are applicable here. Since it cannot be determined from the record that Tate rfeaíized or should have realized what Thomas intended to do or saw of should have seen something which would have reasonably led him to believe the plaintiff was' in' peril or probably was going to rush across the highway and place himself in danger, the doctrine carinot be applied.
For the above and foregoing reasons the judgment of the District Court is affirmed.