119 So.2d 562 (1960)
George FISHER, Plaintiff-Appellee,
v.
NORWICH UNION FIRE INSURANCE SOCIETY, LIMITED, Defendant-Appellant.
No. 4956.
Court of Appeal of Louisiana, First Circuit.
March 21, 1960.
Rehearing Denied April 25, 1960.
*563 Bienvenu & Culver, H. F. Foster, III, New Orleans, for appellant.
Cobb & Brewer, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, TATE, FRUGÉ, and LANDRY, JJ.
TATE, Judge.
A plymouth station wagon driven by George Fisher, the plaintiff in this suit, glanced off a Chevrolet automobile owned by David Armstead which was stopped across the center-line of the highway upon which Fisher was proceeding. This damage suit is by Fisher against Armstead's liability insurer, which defendant appeals from adverse judgment. The plaintiff answers the appeal, requesting an increase in the damages awarded.
Armstead's vehicle was thus situated, obstructing traffic, as a result of a collision between it and a vehicle driven by Marvin Pickett. The earlier collision had occurred four or five minutes before the present or second accident. In the companion decision of Pickett v. Norwich Union Fire Insurance Society, 119 So.2d 566, we affirmed the recovery of damages by the occupants of the Pickett automobile, having found that the sole proximate cause of this earlier collision was the negligence of Armstead in turning suddenly into Pickett's path. This initial negligence of Armstead was also a proximate cause of the second accident, which was its foreseeable consequence, Armstead's initial negligence being so "inextricably interwoven with the subsequent occurrences involved that it cannot be disassociated from any of them," Lynch v. Fisher, La.App. 2 Cir., 34 So.2d 513, 519, also (on merits), La.App. 2 Cir., 41 So.2d 692. See Webb v. State of Louisiana, La.App. 1 Cir., 91 So.2d 156; cf., Green v. State, La.App. 1 Cir., 91 So.2d 153. See also McDonald "Proximate Cause in Louisiana", 16 La.Law Rev. 391 (1956).
The principal question thus before us is whether Fisher's recovery is barred by any contributory negligence on his part.
The accident involving Fisher's vehicle occurred at approximately 5:30 P.M., either just before or just after dark, at a time when it was necessary for motor traffic to use headlights. There was a light misting rain which somewhat interfered with visibility, but which did not prevent a motorist from seeing the way ahead by the use of his lights. Driving northerly on Louisiana Highway 67, Fisher was approaching the scene of the earlier accident at a speed of 40-45 mph, which the uncontradicted testimony of the state trooper indicates to have been a safe speed at the time and the place of the accident.
As a result of the earlier accident, Armstead's vehicle was stopped at an angle so that at least its front bumper was across the center-line of the highway. It was facing southeast but more east than south. (Tr. 265.) Its left headlight had been smashed, but its right headlight was shining "more to the east than it was to the south." (Tr. 266.) Pickett's car was facing north, on the shoulder 4-5 feet off the highway, its taillights burning. It was near some gasoline pumps of a gasoline station-tavern on the east side of the highway, and there were several people standing near it. The lights from the gasoline pumps and the tavern were visibledefendant contending that they were visible enough to illuminate the stopped Armstead car on the highway, but the preponderance of the evidence indicating that they were visible but not bright enough to do so.
If plaintiff Fisher had been approaching in daylight, he could not have seen the Armstead vehicle or the gasoline stationtavern until he topped the rise of a hill about 800 feet south of the spot of the first accident. When Fisher was partway down the hill on the night of the accident, he saw the Armstead car blocking his path; he veered to his left; his vehicle struck the right rear of the Armstead vehicle a glancing blow and slid into the ditch.
At this point, it must be noted that Fisher's testimony both at the trial and as taken *564 by discovery deposition is somewhat conflicting and confused; but, as the trial court specifically stated in evaluating his credibility, we think that this elderly and illiterate witness became confused in the course of vigorous cross-examinations of him by intelligent and aggressive counsel, and we are unwilling to discredit the tenor of his testimony by reliance upon isolated excerpts from it.
For instance, at one point Fisher stated that he struck the Armstead car on its left side, whereas from the physical facts and the way the accident occurred it is very apparent that he struck it on its right rear side. At one point Fisher stated that he saw the obstructing vehicle when he was "partly down that hill" (Tr. 294), whereas at another point under cross-examination he stated that he saw it: "I ain't no judge of feetfootageand I don't know anything about it, but I would say from the length of three or four cars. I don't know how far that would be" (Tr. 305). At one point in his discovery examination Fisher stated that he would have seen the lights on the Armstead vehicle if they had been lit; but at the trial he reiterated that he did not see the lights on the vehicle, but that "if the lights had been burning, I don't believe I would have seen it, because it was sitting this wayseeand I was coming down this way. The light would have been going back that way. I probably wouldn't have seen it." (Tr. 296.)
Considering all of the testimony in the record and considering the physical facts and the physical setting of the accident, we do not believe that the trial court erred in holding that Fisher was free from contributory negligence barring his recovery. As we recently reiterated in Brown v. Employers Mutual Liability Ins. Co. of Wis., 116 So.2d 861, at page 863, "`a motorist [such as the plaintiff] traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway' (Vowell v. Manufacturers Cas. Ins. Co., 229 La. 798, 86 So.2d 909, at page 913) and is exculpated from negligence contributing to an accident alleged to arise from his failure to perceive such unexpected or unusual obstruction in his path, in the absence of a reasonable opportunity to observe the obstruction and thereafter to avoid the accident. Suire v. Winters, 233 La. 585, 97 So.2d 404; Pennsylvania Fire Ins. Co. v. Wright, La.App. 1 Cir., 110 So.2d 235."
Although able counsel for the defendant appellee contends that Fisher should have been alerted sooner by the burning headlight of the Armstead vehicle, the evidence indicates that the headlight shone eastward across the road; and, as in the Brown case, we are unable to say that the naked fact that the plaintiff driver saw a headlight shining, not towards him, but across the road, should have alerted him to the presence of an automobile stopped dead in his path in time for him to have stopped and avoided the accident; especially since this headlight could only be seen in a tableau in which was also blended the lights from the service station-cafe. Nor was the circumstance that a darkened bulk was presented by the side of the automobile as the plaintiff approached in the misting rain that night, sufficient, by itself, to alert him to the unexpected presence of an automobile stopped dead across a main highway, under the circumstances of this case and distracted as he was by the people collected on the shoulder to his right. Myers v. American Chain & Cable Co., La.App. 1 Cir., 109 So.2d 270. See also Thomas v. Southern Farm Bureau Cas. Ins. Co., La. App. 1 Cir., 99 So.2d 764.
Further, as plaintiff Fisher pointed out, the weather and the highway were damp, and there was the danger, if he applied his brakes instead of veering to his left, of his brakes not holding, so that he might have skidded into the collection of people standing on the right shoulder. (Tr. 294-295.)
*565 Thus, considering these exceptional circumstances, we cannot state that the trial court committed manifest error when it held that the present defendant had not borne its burden of proving that Fisher could and should reasonably have seen the unexpected obstruction of the Armstead vehicle as it sat sidewise across the center of the highway, in time reasonably to have avoided thereafter the ensuing collision with it.
Damages.
The trial court awarded the plaintiff Fisher judgment in the amount of $4,325, including the $325 stipulated to have been the property damage caused to Fisher's car by the accident. The plaintiff-appellant by answer to the appeal requests that the award of $4,000 for personal injuries be increased as inadequate, while the defendant-appellee protests that it was excessive.
At the time of the accident Fisher was 63 years of age and had been employed as a painter throughout his adult life. Although his health was impaired due to a hernia and some World War I injuries, he had according to the record been an exceptionally hard-working and uncomplaining individual throughout his working years.
All medical witnesses agreed that at the time of the trial approximately 7 months after the accident Fisher was subject to considerable disability by reason of a marked or advanced osteo-arthritis of the lumbar spine and a marked degenerative arthritis in both of his hips. As a result of this, motion in his hips was limited, climbing would be difficult for him, and it was believed by all the medical experts that Fisher's complaints of pain upon working were genuine. Since it is certain that the extensive arthritic changes predated the accident, the question presented for judicial evaluation is to what extent and for how long this pre-existing arthritic condition was activated or made more symptomatic by the accident.
On behalf of the plaintiff was produced some extremely impressive lay testimony (his former employer, his former foreman, several relatives) who corroborated Fisher's testimony that he had not complained of or been troubled by his back or hips before the accident, but had been increasingly troubled by them afterwards until (just before the trial) he had been released from employment because he was no longer able to perform his duties. Also, an internist and a general practitioner felt that the aggravation produced by the accident was permanent.
On the other hand, the three orthopedists testifying (two called by the plaintiff and one by the defendant)while agreeing that an aggravation had been produced by the accident, which condition was more painful and of longer duration than such injuries would have otherwise been in the absence of the pre-existing arthritic condition were fairly certain that the soft tissue injuries such as the plaintiff sustained were temporary in nature and that the aggravation of the pre-existing arthritic condition had subsided into its pre-accident state by approximately five months after the accident. It should be added that these specialists, as well as the internist, felt that it was very improbable in view of the extensive x-ray findings that plaintiff's back condition did not cause some painful symptoms and some disability prior to the present accident, despite his own testimony to the contrary.
Because of this unanimous medical finding and opinion by the specialists most qualified to express an opinion on the subject, and despite the very impressive lay testimony to the contrary, we must find that the plaintiff Fisher sustained as the result of the accident a fairly painful and disabling aggravation of a pre-existing arthritic condition; which, however, was limited in duration to five months. The award of $4,000 therefor is not inadequate. And, considering the convincing testimony that plaintiff suffered obvious pain and limitation of physical functions in the five *566 months following the accident which had not been instanced prior thereto, we do not think that the award of $4,000 for his physical injuries is manifestly excessive. See Price v. Fidelity & Cas. Co., La.App. 1 Cir., 98 So.2d 708; Bridges v. Farm Bureau Mut. Auto. Ins. Co., La.App. 1 Cir., 94 So. 2d 141; Green v. Southern Furniture Co., La.App. 1 Cir., 94 So.2d 525.
In the companion case of Pickett v. Norwich Union Fire Ins. Society, 119 So.2d 566, we have discussed the complaint of the defendant-appellant that the expert fees taxed as costs are excessive. For the reasons stated in that opinion, however, we approve same as fixed by the trial court, except for the fee of Dr. Williams, which is reduced to a total of $100, of which $50 will be taxed to the present case.
For the reasons assigned, the expert witness fee of Dr. Chester Williams is fixed at $50, and as thus amended the trial court judgment is affirmed.
Amended and affirmed.