REGAN, Judge.
Plaintiff, Charles H. Moffett, Sr., individually and on behalf of his minor son, Charles H. Moffett, Jr., instituted this suit against *914 the defendant, Marquette Casualty Company, the insurer of William Hickey, Jr., endeavoring to recover the sum of $12,500 representing personal injuries sustained by the minor together with damages incurred by the community as the result of a collision in the intersection of French and Louis XIV Streets between two vehicles, one of which was operated by the minor and the other by Hickey. The plaintiff asserts that the proximate cause of the accident was the negligence of Hickey.
The defendant answered and denied the negligence of its insured; it maintained that the accident was caused solely by virtue of the minor’s fault; and alternatively, it pleaded the contributory negligence of the minor and that he possessed the last clear chance to avoid the collision.
From a judgment in favor of the plaintiff in the amount of $545.90 individually, and $3,500 for the benefit and use of his son, the defendant has prosecuted this appeal. The plaintiff has also appealed, requesting an increase in the amount of the award.
The record reflects that on February 23, 1958, at approximately 1:50 p. m. Moffett, Jr., age seventeen, was driving a 1950 Ford sedan automobile in French Street,[1] away from Canal Boulevard and toward Pontchartrain Boulevard. Fie was accompanied by Henry Penedo, eighteen years of age.
Hickey was driving in Louis XIV Street[2] away from the River and towards the lake. There were no controls regulating traffic in this intersection.[3]
The record reveals simple but controversial facts and disputations usually found in cases involving an intersectional collision.
Moffett, Jr. testified that “as I came to Louis XIV which is the first street off of the Boulevard (Canal), I slowed up, looked both ways, and you can only see, oh, about half a block away on account of houses. * * * Nothing could be seen, so I started across. As I hit the middle of the intersection, I heard a horn, and I turned to my left, and there was a car about four houses down. Being four houses down, I thought he would miss us, so I stepped on the gas, and kept going. * * * ”
Moffett, Jr.’s automobile had almost cleared the intersection when the Hickey station wagon struck the left rear fender thereof with such force that it was spun around, causing Moffett, Jr. to be thrown therefrom, the fall rendering him unconscious. Penedo was also thrown from the automobile but fortunately escaped injury.
Moffett, Jr. further related he sustained serious and painful injuries, particularly to his knees and head which resulted in total disability for about eight weeks, and from which he continues to experience residual disability in the right knee.
Penedo, the guest passenger in the Moffett vehicle, appeared on behalf of the plaintiff and substantiated the testimony of Moffett. In addition thereto, he stated that Moffett, Jr. was driving at a speed of about twenty miles per hour when the accident occurred and that after the occurrence thereof, he observed skid marks impressed upon the roadway by the tires of the Hickey vehicle and estimated them to be fifty to seventy feet in length.
The foregoing observation was fully corroborated by Emanuel Palmisano, the policeman who conducted the ensuing investigation. He testified that he had measured fifty feet of skid marks impressed upon Louis XIV Street by the tires of the station wagon.
Hickey, in relating his version of the accident, laboriously insisted that he was driving toward the lake in Louis XIV Street moving at a speed of about twenty miles per hour and that he was approximately fifty feet removed from the intersection of *915 French Street when he first saw the Moffett vehicle, which was then about ten feet removed from the corner of Louis XIV Street. He noticed that the driver thereof was traveling at a speed of about thirty-five or forty miles per hour and that he did not stop or slow down as he entered the intersection and made no effort to apply his brakes. When Hickey realized that a collision was imminent, he applied the brakes of the station wagon, the tires of which he conceded impressed about fifty feet of skid marks on Louis XIV Street before striking the left rear fender of Moffett, Jr.’s vehicle. The station wagon, following the collision, knocked down a fire hydrant and came to a stop when a tree finally obstructed its forward movement.
The foregoing evidence reveals that only questions of fact were posed for the trial court’s consideration. The judge thereof obviously accepted Moffett Jr.’s version of the manner in which the accident occurred and therefore concluded that he was free of any negligence which contributed to the accident and that the proximate cause thereof was the negligence of Hickey which consisted of excessive speed and his consequent inability to control the vehicle.
The initial question posed for our consideration by this appeal is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants’ version of the manner in which the accident occurred. Suffice it to say that the whole tenor of the record leads us to the inevitable conclusion that Hickey was negligent in driving at a speed greatly in excess of the legal limit of twenty miles per hour and was thus unable to exereise proper control of his vehicle as evidenced by the skid marks and the fact that the vehicle continued its forward movement until it was ultimately stopped by a tree.
On the other hand, the defendant has failed to exonerate itself from liability herein by proving that Moffett, Jr. was con-tributorily negligent. That Moffett, Jr. had the right of way is conceded since he approached from the right of Hickey’s vehicle .at an intersection, the traffic of which was not regulated by stop signs; he was not called upon to anticipate that this vehicle would be operated at a highly excessive rate of speed. Having pre-empted the intersection at a reasonable speed, after looking and ascertaining that there was no apparent danger, he clearly possessed the right of way over the Hickey vehicle.
In disposing of the issue of Moffett, Jr.’s contributory negligence, we have relied on the rationale enunciated by the organ of the Supreme Court in the case of Thomas v. Checker Cab Company of New Orleans.[4]
In fact, we believe the facts of this case are more emphatically in favor of the conclusion we have reached herein than they were in the Thomas case, since, in that case a stop sign and a right-of-way street were issues that the court was required to dispose of before finding Thomas free from fault.
The mere fact that one street is hard-surfaced or paved does not of itself give to vehicles moving therein priority over those being driven in intersecting unpaved streets.
*916 Counsel for the defendant maintains that the award to the plaintiff for the benefit of the community in the amount of $545.90 for “medical care and loss” must be reduced since the plaintiff failed to prove that he had been damaged to this extent.
The plaintiff introduced into evidence a statement from Dr. Frederick Boyce in the amount of $350 which the litigants conceded, during oral argument before this court, contained some charges for medical care to Moffett, Jr. not associated with the accident. Respective counsel then stipulated in writing that the correct amount thereof should be $140. The plaintiff also paid Mercy Hospital $230.90 and Dr. Pollingue $15, making a total of $385.90. We therefore conclude that the award in the amount of $545.90 for medical care and loss must be reduced to $385.90.
The defendant also maintains that the award of $3,500 to the plaintiff for the use and benefit of the minor is excessive as his injuries were not extensive or permanent, as can best be demonstrated by the fact that the United States Navy accepted him as an enlistee about six months after the accident.
Dr. O. C. Pollingue, an orthopedic surgeon, appeared on behalf of the plaintiff and testified that he had examined young Moffett on March 26, 1958, in conformity with a request from Dr. Boyce, a surgeon who had treated Moffett, Jr. after the accident and suspected the possibility of a torn cartilage of the right knee-cap. The examination of Dr. Pollingue, however, revealed there was none. Dr. Pollingue diagnosed a marked crepitation of the right knee-cap. Briefly, he stated this condition is permanent, that the use of the knee-cap will diminish in the future as there is only a “certain amount of mileage in that joint” and consequently, activities requiring excessive use of the knee should be avoided.
In view of the foregoing uncontradicted medical evidence, we are of the opinion that the award of $3,500 to the plaintiff for the use and benefit of Moffett, Jr. was neither excessive nor inadequate.
For the reasons assigned, the judgment of the lower court insofar as it awarded to the plaintiff the sum of $545.90 is amended so as to decrease it to the amount of $385.90, and as thus amended, it is in all other respects affirmed. The defendant is to pay all costs.
Amended in part, affirmed in part.

. This is a gravel street.

. Louis XIV is a hard-surfaced street.

.Neither street possessed the right of way by local ordinance, and the speed limit was twenty miles per hour.

. “Where motorist stopped for stop sign upon arriving at intersection with right-of-way street and looked to the right but did not see approaching taxicab although vision was unobstructed for at least 100 feet in that direction, motorist had right to assume that if there was any automobile out of his range of vision approaching from that direction its operator would be driving at lawful rate of speed and in proper manner, and thus the motorist acted as a reasonably careful and prudent person when he entered intersection and proceeded across street, and motorist, whose automobile collided with defendants’ high speed taxicab, was not contributorily negligent.” See Syllabus 2, 229 La. 1079, 87 So.2d 605 (1956).