SAMUEL, Judge.
This suit, for personal injuries and property damages resulting from an accident involving two automobiles, was filed by the owner-driver of one of the cars against the owner-driver of the other car and his liability and collision insurer. The defendants answered, denying liability, and reconvened for the damages to the defendant car. There was judgment in the trial court in favor of plaintiff on the main demand and against the original defendants (plaintiffs *166 in reconvention) on the reconventional demand. Defendants have appealed. In this court they seek a reversal on the question of liability and, alternatively, a reduction in the amount awarded for personal injuries. Plaintiff has answered the appeal seeking an increase in the amount awarded for personal injuries.
The undisputed facts are as follows: The accident occurred in the Parish of Jefferson on Louisiana Highway 18, known locally as “Bridge City Avenue”, shortly after 5 p. m. on a December day. It was either dusk or had just turned dark and a light rain was falling. The highway is a two-way, blacktopped road with two traffic lanes. There is no center stripe marking the middle of the highway. Plaintiff and the defendant driver were traveling on the highway in opposite directions. It was plaintiff’s intention to turn left across the highway into Oak Avenue, which enters but does not cross the highway, and although he stopped for that purpose, he did not begin to make the turn. Plaintiff’s proper blinker or turn indicator was on, as were the headlights of both cars. The brakes of the defendant car were applied just prior to the collision and that car skidded from side to side as it approached and struck the plaintiff vehicle. The left front fenders of both cars were damaged in the collision and plaintiff’s right knee was injured.
Plaintiff contends his vehicle was stopped entirely in his lane of traffic (the east bound lane) when the defendant car swerved across the center of the highway as it was passing and struck his left front fender. On the other hand, defendants contend the plaintiff vehicle was across the center of the highway about 5 feet in defendants’ lane of traffic (the west bound lane) and in an attempt to avoid the accident the defendant-driver applied his brakes and skidded into the other vehicle. Thus, with respect to liability, the question presented is which vehicle did, in fact, encroach on the opposing traffic lane.
With regard to the manner in which the accident happened plaintiff produced four witnesses, himself and three persons who actually saw the accident; the defendants produced one, the defendant-driver. As only a question of fact is involved, and as we find no manifest error in the trial judge’s finding of fact, we deem it unnecessary to discuss the testimony in detail.
Counsel for defendants strenuously urge that plaintiff and his witnesses are not entitled to belief because of various discrepancies in their testimony, particularly as the same relate to differences between testimony at the time of trial and that given in pre-trial depositions. We do find some discrepancies ; but this is also true of the testimony given by the defendant-driver. Plaintiff was an elderly, totally uneducated man who was confused by some of the questions asked of him while he was on the witness stand. And normally we expect to see some discrepancies in the testimony of any witness, however truthful he may try to be. This is especially the case when considering minor differences between a witness’s testimony during the trial and the testimony he gave by deposition often months before trial.
The important considerations here are that plaintiff’s testimony substantially supports his contention, the testimony of the other plaintiff witnesses, particularly one named Green, corroborates the fact that the plaintiff car was stopped in its proper lane of traffic, and the trial judge, who saw and heard all of the witnesses, believed the testimony of plaintiff and his witnesses. There being no manifest error in the finding of fact by the trial judge, we affirm on the issue of liability.
Plaintiff was awarded $2,500 for injuries to his right knee. As it relates to that injury, plaintiff’s testimony was as follows: He was 66 years of age at the time of the accident. He believed his right kneecap had been knocked out of place. When the pain failed to subside after several days of home *167 treatment with epsom salts and hot water, he went to his family physician, Dr. Ville-marette, who bandaged the knee and recommended continued heat treatments. He returned weekly to Dr. Villemarette for a period of four weeks at which time the doctor referred him to an orthopedic specialist. The examination by this specialist was very painful and involved the injection of medication by needle under the knee. He made only the one visit to the specialist; thereafter, he was treated by Dr. Villemarette. During the following September, while the treatments were continuing, he suffered another injury to his right knee. He is still being treated by Dr. Villemarette for his knee trouble, has suffered considerable pain since the first injury and continues to do so. He returned to his employment for the first time during February, two months after the accident had happened. But he couldn’t stoop down and as a result of the pain in the knee he was forced to retire after two weeks of trying to work. He estimates that he could have worked three or four additional years if the knee had not been injured.
Three doctors testified at the trial, two for the plaintiff, a general practitioner and an orthopedic specialist, and one for the defendants, also an orthopedic specialist.
Dr. Villemarette, the general practitioner and treating physician, testified as follows: He had treated plaintiff prior to the accident but it was only on December 29 (one week after the accident) that he had ever treated him for knee trouble of any kind. On that date there was swelling in the right knee area and plaintiff was limping; there was pain and tenderness on the medial aspect of the right knee and on extension and right and left motion of the knee joint. X-rays revealed no evidence of a fracture. Plaintiff was treated conservatively, the knee was bandaged and he was given pain and anti-inflammatory medication. He was told to treat the knee with compresses and to return in a week. When the knee failed to respond after four more treatments, plaintiff was referred to Dr. Winters, an orthopedic specialist. After seeing Dr. Winters, he returned to this witness for treatment on nine more occasions until September 19 when he suffered another injury to the same knee. The symptoms from the first accident remained the same except that they were aggravated by the second accident. Plaintiff continued to receive almost weekly treatments until the date of trial. He still complained of pain and there was tenderness over the knee area on direct pressure and on movement of the knee. The pain has improved to some extent but has continued, in varying degrees, to the date of trial. In this doctor’s opinion the knee injury was caused by a blow suffered in the first accident and, approximately nine months later, aggravated by the second. The blow received in the first accident resulted in a contusion and separation of the right knee which at first did not appear to be serious, but which did not improve with treatment and continued to cause trouble.
Dr. Winters, the orthopedic specialist called by plaintiff, testified as follows: He examined plaintiff during the month of January following the accident and at that time reviewed the X-rays taken by Dr. Villemarette. The examination revealed tenderness of the upper anterior part of the leg bone at the site of attachment of the patella tendons. Plaintiff had pain and tenderness mainly at the site of attachment, and some diffused tenderness, although he had a full range of motion. He complained of pain with full flection of the joint and this area was injected with hydro-cortisone. The X-rays revealed a calcific spur which the doctor initially believed was caused by the trauma because he was under the impression the accident occurred one month earlier than it actually had. Since it would not have been possible for such a deposit to have developed in the short period of time from the date of the accident to this doctor’s examination in January, he revised his earlier conclusion and now feels plaintiff had the spur prior to the accident *168 and that he suffered a contusion over the anterior of the knee in the region of the spur which aggravated that deposit. This doctor instructed plaintiff to return to the care of his family physician. He reexamined plaintiff on the day of trial and reviewed X-rays taken one week earlier, which X-rays revealed an osteochondral fracture. He was unable to state whether the changes noted on that X-ray were a result of the trauma suffered by plaintiff in the first accident, the one in suit. However, he did not exclude that possibility because it is not uncommon for small entra-articu-late fractures to go unobserved on X-rays.
Dr. William A. Roy, the orthopedic specialist called by defendants, testified as follows : He examined plaintiff during the month of February at which time he found the right knee was one-half inch smaller than the left but he did not regard this as significant. He noted a normal range of motion and stated plaintiff did not complain of pain during the examination. He examined both knees and found nothing wrong with the right knee except evidence of spurring in both patella tendons, and some difficulty in the left knee. He “didn’t find very much wrong with the man”, but believed at the time that plaintiff would be discharged by his treating physician “in the near future” and would be able to return to work in a week or 10 days. He admitted a small fracture, such as that described by Dr. Winters, might not show up on an X-ray.
We have considered the amounts awarded in other somewhat similar cases involving knee injuries insofar as the same are relevant to the question of whether the judge abused his discretion in fixing the award in the instant case. See Anselmo v. United States Fire Insurance Company, La.App., 169 So.2d 550; Moffett v. Marquette Casualty Company, La.App., 141 So.2d 913; Goux v. Baton Rouge Coca Cola Bottling Company, La.App., 122 So.2d 649; Fisher v. Norwich Union Fire Insurance Society, Ltd., La.App., 119 So.2d 562; Pitre v. Roberie, La.App., 117 So.2d 74.
Applying the principle set out in Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, and Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149, we find the $2,500 award is neither so excessive nor so inadequate as to constitute an abuse of the “much discretion” vested in the trial court by Civil Code Article 1934(3).
The judgment appealed from is affirmed.
Affirmed.