185 So.2d 619 (1966)
Wilson ROBERIE, Plaintiff-Appellee,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. 6599.
Court of Appeal of Louisiana, First Circuit.
April 4, 1966.
Rehearing Denied May 9, 1966.
Writ Refused and Writ Granted in Part June 22, 1966.
*620 Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Joseph A. Gladney, Baton Rouge, Fusilier, Pucheau & Soileau, Ville Platte, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
In this action plaintiff seeks to recover from his erstwhile automobile liability insurer, Southern Farm Bureau Casualty Insurance Company, the amount of money *621 he was forced to pay in satisfaction of a judgment rendered in excess of the maximum limits of his policy of insurance. See Pitre v. Roberies, (La.App., 1959) 117 So.2d 74. He is seeking to recover $7,000, the amount he was able to effect a compromise for in settlement of the excess judgment. The maximum liability protection afforded him by the policy of insurance issued by defendant was $20,000 under the conditions hereinafter explained. Further, the sum of $3,500 is sought as attorney's fees for the prosecution of this suit.
Plaintiff alleges defendant guilty of bad faith and negligence in handling and discharging the obligations defendant owed to him under the contract of insurance. He alleges:
1. Defendant failed to submit to the plaintiffs in Pitre v. Roberie, cited above, a fair and substantial offer of settlement;
2. Defendant assured plaintiff the claim against him was not a serious one;
3. Defendant acted in a fiduciary capacity for conflicting interest, was arbitrary in refusing to settle within the policy limits, as defendant had an opportunity to settle for $20,000 and failed to do so;
4. Plaintiff was not requested or required to be present in court at the trial of the case;
5. Defendant, through counsel, failed to offer to prove the financial condition of plaintiff in order to show his financial position was weak and he lacked ability to pay large damages;
6. Defendant did not advise with plaintiff regarding his liability if the court should render a judgment in the cited case for an amount in excess of the policy limits of $20,000, nor did defendant, through counsel, explain to plaintiff the likelihood of an excess judgment being rendered against him, particularly in the death claim.
Plaintiff alleges he is entitled to recover attorney's fees under the provisions of LSA-C.C. Article 1934 as interpreted by Smallpage v. Wagner & Wagner, La.App., 84 So.2d 863.
The trial judge found defendant was guilty of extreme bad faith in disregarding the interest of the plaintiff in the cited litigation. The lower court rendered judgment in favor of plaintiff for $7,000, but denied his claim for attorney's fees. From this judgment both parties appealed.
The facts, other than those disclosed in the reported case cited above, pertinent to this opinion can be succinctly stated. The plaintiff relied entirely on his insurer, the defendant, to defend him in this suit. He is a person with very little formal education, unable to read and write the English language. His business was farming and training race horses. He was not advised it would be necessary for him to be present at the trial, or desirable for him to attend. In fact, he was excused by the insurer for the reason he was not a witness to the accident in which his truck was involved and he had knowledge of no information about which he could testify.
During the course of the litigation offers of compromise were received by the insurer, but none of these, including the offer to compromise for $20,000 received on the day of trial were communicated to or discussed with the plaintiff. Judgment was rendered against both defendants therein (plaintiff and defendant herein) in the trial court and on appeal was increased in quantum by this court.
The negligence and bad faith attributed to defendant in the various enumerated phases above have, for all effective purposes, been reduced in the main to a charge of not settling the litigation within the policy limits, and failing to communicate offers of compromise to plaintiff. Serious efforts are made by plaintiff to recover the $3,500 as attorney's fees.
After this suit was submitted to the trial judge, he dictated the following reasons for judgment:
"The defendant herein issued its public liability insurance policy with limits of Ten *622 and Twenty Thousand Dollars to the plaintiff, Wilson Roberie. In an accident several people were injured and one of them died. The suit was filed in St. Landry Parish by the injured parties for amounts far in excess of the policy limits against Roberie and this defendant. A final judgment after appeal was for some Twenty-eight Thousand Dollars. The insurance company paid Twenty Thousand and the plaintiff Roberie herein compromised his Eight Thousand liability for Seven Thousand Dollars and he is now suing the insurance company for that amount plus attorneys' fees. Before the trial the injured plaintiffs in the suit in St. Landry Parish made an offer to settle all claims for Twenty Thousand Dollars. The claims adjuster and the attorney for this defendant insurance company turned it down. The case was tried and appealed. The interest of the insurance company and the interest of the insured were in conflict and it was extreme bad faith for the insurance company to disregard the interest of the insured. It makes no difference how the money was to be allocated amongst the multiple claimants or on what theory the insurance company thought it could have some money by trying the case. The evidence in that case insofar as I can determine from the evidence here and the opinion of the Court of Appeal gave little hope of success in that regard. The case should have been settled for the Twenty Thousand Dollars. See Wooten v. Central Mutual Insurance Company, La.App., 166 So.2d 747.
"There will be judgment herein in favor of Wilson Roberie against the Southern Farm Bureau Casualty Insurance Company for Seven Thousand Dollars with interest and all costs. The claim for attorneys' fees is denied."
The defendant assigned the following specification of errors of the trial court:
1. The trial court committed manifest error in finding that the defendant was in bad faith in its conduct of compromise settlement negotiations in the Pitre case.
2. The trial court erred in stating that the defendant insurer should have offered $20,000 prior to the trial of the Pitre case and that it "makes no difference how the money was to be allocated amongst the multiple claimants or on what theory the insurance company thought it could save some money by trying the case."
3. The trial (court) erred in its award of $7,000.00.
Defendant relies on the cases hereinafter cited to support its position, and correctly so, the burden of proving bad faith is on the plaintiff.
The policy of insurance contains this provision relative to the defendant's obligation to defend the plaintiff. Section II (a) "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." Thus it is seen from the above provision the defendant contracted to "defend any suit against the insured * * *." This obligation is not divisible or limited to those suits which are within the policy limits, but it is in fact the duty of the defendant to defend any suit regardless of the amount.
The policy of insurance further reveals the defendant's judgment liability is limited to the maximum amount of the coverage offered by the contract which is $20,000 per accident, and a maximum of $10,000 per person injured or killed.
Under the authority of the jurisprudence of this State on the subject of abuse of authority, arbitrary action, absence of good faith, presence of bad faith in failing to make a settlement of a claim within policy limits, these cases being Davis v. Maryland Casualty Company (1931) 16 La.App. 253, 133 So. 769; Tate v. Norfolk and Dedham Mutual Fire Ins. Co. (La.App., *623 1963) 153 So.2d 495; Stewart v. Wood (1963) 153 So.2d 497; and New Orleans & C. R. Co. v. Maryland Casualty Co. (1905) 114 La. 153, 38 So. 89, 6 L.R.A.N.S., 562, as well as Younger v. Lumbermens Mutual Casualty Co. (La.App., 1965) 174 So.2d 672, as the facts exist herein, we cannot find the defendant acted in bad faith in failing to compromise this subject claim within the policy limits. In fact, we fail to find any offer of compromise made by the claimants in the subject lawsuit wherein they agreed to or proposed to settle their claims within the limits of the policy, as will be discussed hereinafter.
We find no fault in the defendant's ultimate decision to defend the lawsuits, nor do we criticize the manner in which the cases were defended. The defendant was not the insurer of the results of the litigation.
The jurisprudence, and specifically the cases cited above, require the insurer to act in good faith and it must refrain from acting arbitrarily in refusing to make settlement of claims within policy limits.
The most serious charge against the defendant is the failure of the insurer to keep the insured informed of any offers of compromise, thus nullifying and negating any possibility of settling the claims to avoid greater loss to the insured. The search for like cases fails to disclose any previous case in this state involving the negligence or bad faith of the insurer to keep fully informed the insured of the status of litigation and lack of communication to the insured of compromise offers which exceed, by the insurer's own determination, its exposed liability, except the recent case of Younger v. Lumbermens Mutual Casualty Company, supra.
The court's holding in Younger v. Lumbermens Mutual Casualty Company, supra, while it discusses our problem, is not controlling in its conclusion because the determination therein is confined to the peculiar fact of that case. In the Younger case there was a serious question of liability.
The court stated "[11, 12] Considering all the circumstances in this case, we are unable to say the insurer's failure to keep its insured informed of an offer to compromise within policy limits, even where the insured was clearly exposed to liability in excess of policy limits, amounted to a breach of duty such as to justify a holding of the insurer's bad faith. In this regard, we take into consideration not only that the insurer's defense to liability vel non was not without reasonable basis, but especially that the insured had made adamant, repeated, and consistent statements evidencing her strong and not unreasonable belief that the accident occurred without fault on her part and solely because the little girl ran from behind parked cars into the insured's path at a time when she could not avoid colliding with the child. While the jurisprudence indicates that the better practice is for the insurer to keep its insured informed under such circumstances, nevertheless, under the present facts, the insurer's failure to communicate information of a compromise offer (which it was not necessarily obliged to accept, see Footnote 2 above) was without consequential connection with the reasonableness or not of the insured's rejection of the compromise offer, based upon its own insured's undeviating and not unreasonable version of the accident, which exculpated her from fault if it had been found by the trier of fact to be correct." (Emphasis supplied.)
In our case here there was no question of ultimate liability. The driver of the plaintiff's truck drove into the opposite or oncoming lane of the highway and into the path of the Pitre vehicle. The most serious question was to evaluate the possible liability of the owner and insurer of the wrecker. The very most hoped for was a sharing of the judgment. That was problematical. Further discussion of this phase is not needed as we are not holding the insurer liable to plaintiff on a finding of bad faith in failing to effectuate a compromise. *624 The question of certain liability, the unknown being quantum, does figure in our consideration for the reason it increased and made more onerous the duty of the insurer to keep the insured fully informed of any and all compromise offers.
The defense of a tort action is a highly technical procedure, involving the application of both substantive and procedural law. For an insurer to undertake the defense of such an action requires the utmost attention to the protection of the rights of the insured. The insured must be advised of what is to be expected of him in proper conduct of his defense. The defense of a lawsuit of this nature is a specialty of which the average person has no appreciation. The insured should have been directed explicitedly in what was needed for the protection of his interest.
In Appleman on Insurance Law and Practice, Vol. 7A, Section 4712, this comment is found: "* * * It has been held that the company's failure to notify the insured of an offer to settle a claim does not necessarily amount to bad faith (see Kleinschmit v. Farmers Mut. Hail Ins. Ass'n of Iowa, C.C.A.Neb.1939, 101 F.2d 987). But where an insurer, after an investigation, discovered that it was facing the probability of a judgment exceeding the policy limits, it was held to be required to appraise the insured thereof. * * *."
See 40 A.L.R.2d 216 Annotated Footnote, Section 17, Failure to inform insured of compromise offer.
"The failure of a liability insurer, upon receiving an offer to compromise an action against the insured, to inform the latter of this, has sometimes been regarded as evidence of its bad faith, in a subsequent action for wrongful rejection of the compromise."
While it could be said there is no obligation to communicate any offers of compromise within the policy limits in cases where the demand does not exceed the policy limits, there is clearly a duty to consult with the insured in cases wherein the failure or refusal to compromise might reasonably or conceivably result in a judgment exceeding the protection afforded by the policy.
In determining the basis for imputing liability to insurer, the cases which have previously passed on the question involved in matters of failing to settle within the policy limits have found liability where either bad faith or negligence existed.
Again referring to Appleman's work, cited above, Section 4712 also states: "In starting the discussion of the next two sections, it should be pointed out that there is more of a difference in verbiage than there is in result in the cases cited in them. Some courts, in weighing the responsibilities of the liability insurer, speak of bad faith; some speak of negligence, others use the two terms interchangeably. And, in truth, they are to some extent interchangeable. The insurer, as a professional defender of lawsuits, is held to a standard higher than that of an unskilled practitioner. What might be ignorance in his instance may be unforgiveable oversight of the insurer; what might be neglect in his instance could well constitute bad faith on the part of the insurer. The question is always: `Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?' If it did, there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured. And the insured, having surrendered to the insurer the exclusive control over these matters which impinge so closely upon his future welfare and financial wellbeing, is entitled to expect that skill, that judgment, and that consideration to which reference has been made. * * *."
*625 Negligence has many definitions. The negligence here would involve the lack of proper attention to protect the rights of the insured. The failure to take the steps indicated or dictated by action of others to protect the rights of the insured. The insurer, when it undertook to discharge the obligations imposed on it under its duty to defend, under its contract, which is not to be compared to malpractice, as herein there is a higher duty, obligated itself to do the things and to perform the acts reasonably calculated to protect the insured's rights. Certainly, among these acts, was the duty to keep the insured informed of the progress of the matter of his individual exposure to liability. It cannot be disputed the insurer, under the terms of the policy, quoted above, had the right to make such settlement of any claim or suit as it deems expedient, and conversely, the right not to make settlement as it deems expedient. However, the exercise of this right is not plenary. It is qualified to the extent it must be used in a manner reasonable, not arbitrary. Therefore, the insurer was bound, in the proper and reasonable discharge of its duties toward the insurer, to keep him informed of any offers of compromise where the amount sued for exceeded the coverage afforded by the policy of insurance, and particularly so in this case which involved an offer to settle that was for more than the maximum of the coverage afforded by the policy and when the liability of the insurer, as calculated by it, was less than the maximum protection.
It can readily be seen the policy here offered protection to the insured in a maximum amount of $10,000 per person injured or killed with a maximum of liability of two or more persons injured or killed of $20,000.
The insurer contends its contract with the insured did not have a maximum coverage of $20,000. It is correct in asserting it was not required to add to the claim of one claimant which exceeded the maximum coverage for one person the unexpended portion of the other limit. In other words, the claim arising from the death of Mrs. Pitre exceeded the limits of the policy, this limit being $10,000, and the claim of Mr. Pitre for his bodily injuries (the insurance company's investigation apparently failed to disclose his claim for loss of wages) did not dissipate the entire limits of $10,000. The insurer was not required to allocate the unexpended portion of coverage on Mr. Pitre's claim to the excessive liability of the claim arising from Mrs. Pitre's death. This is true. The insurer was not obliged to combine the two limits of $10,000 thus affording the insured $20,000 protection.
Therein the insurer failed to discharge a duty to the insured. It failed to advise him of this policy position and afford him the opportunity, with legal aid and counsel, to determine the most protective course to pursue. This duty is included in the obligation to defend any suit.
On the day of the trial, the plaintiffs in Pitre v. Roberie, cited above, offered to accept a total of $20,000 in settlement. The other defendants (Diesi Pontiac Co., and its insurer) offered to pay $2,000. The insurer offered to pay $12,500 thus leaving for the purposes of this offer under appellant's calculation of liability $5,500 to be contributed by insured.
The insurer, knowing the offer of settlement of $20,000 for settlement of the claims of all parties arising out of the accident included an amount in excess of its policy limits of $10,000 for the death of Mrs. Pitre, was under a duty to advise the insured of this fact. There arose the obligation, the duty, to communicate the offer of compromise to the insured for his consideration, and acceptance or rejection, and with legal aid and assistance, to consider the legal import of failing to settle for the portion of the compromise offer attributible to the death claim arising out of the death of Mrs. Pitre. The insurer's action in disregarding the rights of the insured to a consideration of this compromise offer was *626 negligencea breach of a duty owed to the insured.
We find not an affirmative attitude on the part of the insurer to conceive a manner or way to connive a design against the insured to cause him a pecuniary loss, but rather an absence of discharge of a duty imposed by the law between the parties, the contract of insurance.
The insurer must consider the insured as he is. The insurer must deal with the insured subjectively. In this case, the insured was an illiterate person well known to the agent, Mr. Whitney. It was the obligation of the insurer to be sure the insured knew his exposure to liability and his involvement in the Pitre suit.
Especially is the insured entitled to the notice as his interest necessarily conflicts with the interest of the insurer. This conflict is inevitable where the amount claimed is in excess of the policy limits and is further compounded by an appraisal by the insurer of and exposure of liability in an amount greater than the coverage afforded.
It also appears prior to perfection of the appeal it was not explained to the plaintiff he might lose more or incur a greater liability by an increase in the award by the appellate court. That is what occurred. The quantum was increased. In the end, Mr. Roberie paid the sum of $7,000 in settlement and the insurer, defendant herein, paid an amount in excess of $20,000.
Plaintiff was willing to pay $2,000 in compromise of the judgment. We believe justice demands the defendant be granted credit for the $2,000 plaintiff was willing to pay in compromise.
We find liability based on negligence. There is no showing of fraud or bad faith within the intendment of LSA-C.C. Article 1934. The claim for attorney's fees is rejected; and in view of our finding herein there is no need to discuss the other facets of the plaintiff's complaint.
The award of the trial court is reduced to the sum of $5,000, and in all other respects the judgment appealed from is affirmed.
Amended and affirmed.