**TEXOMA AG–PRODUCTS, INC.,**
Plaintiff-Appellee,

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY,**
Defendant-Appellant.

No. 84–1499.

United States Court of Appeals,
Fifth Circuit.

March 18, 1985.

Stan Carter, Wichita Falls, Tex., for defendant-appellant.

Lonny D. Morrison, Stephen R. Shelton, Wichita Falls, Tex., for plaintiff-appellee.

Before THORNBERRY, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

This is a *Stowers*[1] case. The insured, Texoma AG-Products (Texoma), obtained a judgment in the district court for actual and punitive damages against its insurer, Hartford Accident & Indemnity Company (Hartford), under the Texas law that imposes a duty of reasonable care upon a liability insurer in the defense of its insured. We affirm.

On October 3, 1978, Texoma's 18-wheeler truck came through a stop sign into a road intersection near Iowa Park and collided with a vehicle driven by Earl Scheffe, who was seriously injured. Scheffe, his employer George Adams, and Ralph Harvey, the owner of Texoma, enjoyed good relations with each other. Adams and Harvey took an interest in seeing that Scheffe obtained a fair disposition of his claims. Adams kept Scheffe on his payroll and advanced medical costs without awaiting the compensation carrier. Harvey visited Scheffe in the hospital several times and assured him that he would get the best medical treatment. Harvey telephoned the Hartford office in Fort Worth and then spoke to the adjuster working the claim about moving it

---

1. *G.A. Stowers Furniture Co. v. American Indem-* *nity Co.,* 15 S.W.2d 544 (Com.App.Tex.1929).

expeditiously. He was assured by the adjuster that this would be done.

After more than a year had passed without visible progress, Harvey in March of 1980 arranged a meeting attended by Hartford's adjuster, Scheffe, Adams, and a representative of the compensation insurance carrier. Hartford let this opportunity pass, however, and Scheffe finally retained a lawyer in late May. Scheffe's lawyer filed suit and offered to settle the case for $350,-000. Texoma's policy limits being $100,-000, it retained counsel; and through Texoma's efforts all parties agreed to a settlement in 1982 for $135,000. Texoma paid $35,000 of the settlement and brought the present suit against Hartford.

After a three day trial, the jury found that Hartford failed to exercise care in handling the claim, that with care it could have been settled for $100,000 or less prior to filing of the suit, that the damages proximately caused Texoma were $40,000 (which included $5,000 attorneys' fees incurred by Texoma in defense of the Scheffe suit), that Hartford was guilty of heedless and reckless disregard of its insured's rights to which it was consciously indifferent, and set punitive damages at $250,000. The district court reduced the punitive damages to $125,000 and rendered judgment for Texoma for $165,000.

### 1. Liability of the Insurer For Pre-Trial Settlement Suffered by Insured

Hartford argues that there is no Texas authority that extends liability under the *Stowers* rule in the absence of a judgment against the insured in excess of the policy limits. It is true that the reported cases have arisen after judgments against the insured, but the Texas courts have not limited the insurer's duty to the use of care in guarding against a judgment. Nor do we see any sign that a Texas court would leave an insured unprotected against a defaulting insurer and force the former to await a lawsuit's bitter end and thereby to increase the damages. In the original *Stowers* case, the Texas court held that the liability insurer was required to "exercise

that degree of care that a person of ordinary care and prudence would exercise under the same or similar circumstances, and a failure to exercise such care and prudence ... [is] negligence on the part of the indemnity company." 15 S.W.2d at 547. That court quoted at length, and with approval, from the decision of the Supreme Court of New Hampshire in *Douglas v. United States Fidelity and Guaranty Co.,* 81 N.H. 371, 127 A. 708 (1924). The quoted language of the New Hampshire opinion states a broad definition of the responsibility of the insurer and its potential liability when its negligence results in damage to the insured which it has contracted to serve.

■ The duty of care which the insurer owes to its insured may require that a specific offer from the injured third party be accepted and paid, or that the insurer initiate settlement discussions or pursue negotiations with the third party, at any stage of the matter, before or after litigation is initiated, in or out of trial. What the insurer should do depends upon the circumstances of the particular case. The Texas rule is that "[t]he ultimate responsibility of the insurer to the insured is to exercise such care and diligence which an ordinary, prudent person would exercise in the management of his own business." *Chancey v. New Amsterdam Casualty Co.,* 336 S.W.2d 763, 765 (Tex.Civ.App.— Amarillo 1960, writ ref'd n.r.e.). This simply means that the conduct of the insurer is tested by an objective standard without regard to conflicting interests of insurer and insured. The question is what a reasonable person, facing the particular claim and knowledgeable of the attendant risks, would do in the management of his own business and in the interest of minimizing his liability.

### 2. Sufficiency of the Evidence And Punitive Damages

Hartford strains to argue that the jury findings of negligence and proximate cause are unsupported by sufficient evidence. Our discussion of the evidence in upholding

the finding of gross negligence will demonstrate why we find no merit to other arguments on sufficiency of the evidence.

■ Texoma contends that Hartford may not raise sufficiency of the evidence objections here because of its failure to move for a directed verdict at the close of the evidence. Hartford did object to the court's charge to the jury on these grounds, and in doing so presented the issues to the district judge and with the effect of a directed verdict motion. *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024–27 (5th Cir.1979).

Hartford's point of error with arguable merit is that under the Texas law punitive damages are not recoverable under this record. Even that argument fails.

The predicate for punitive damages has been explained by the Texas Supreme Court as follows:

> The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature.

*Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981); *International Armament Corp. v. King*, 686 S.W.2d 595, 597, 28 Tex.Sup.Ct.J. 255, February 23, 1985.

In the present case the question is whether the evidence would support a finding that Hartford displayed conscious indifference to the disposition of Scheffe's claim—that the Hartford management realized the risk of being forced to pay policy limits sooner or later and did not care about the consequences to Texoma of delaying that payment until later. *See Maxey v. Freightliner Corp.*, 722 F.2d 1238

(5th Cir.1984), 665 F.2d 1367, 1373–74 (5th Cir.1982).

From our reading of this record we are doubtful that the managing agents of Hartford lacked concern for Texoma's rights and for the settlement of Scheffe's claim. We would probably explain their inaction as a matter of the inefficiency of a corporate bureaucracy and as the consequence of a bouncing file which either sat upon a desk or journeyed by post but which no one moved to resolve. It was more a matter of procrastination and poor judgment than conscious indifference, we suspect. That poor judgment, incidentally, seems to have prevailed in the handling of the present suit. Here, again, there has been a failure to settle what would seem to have been a hazardous case, and where only Hartford's interest has been at risk. Instead of settling, Hartford has had this picture of its indifference, or at least ineptness, spread before a jury and now upon the pages of this reporter.

■ But we are speculating about what we might decide on an issue that is not ours to decide. The question for us is whether the district court was justified by this record in allowing the claim for punitive damages to go to the jury. We decide only if reasonable jurors could agree with this verdict. *See Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969). The record passes that test; the jury was entitled to find conscious indifference on the part of Hartford.

The Hartford claims supervisor knew and recorded in her file a few days after the accident in 1978 that this was a serious claim. Hartford knew then that either all or at least 90 percent of the fault for the accident was attributable to Texoma's driver. Two months after the accident Hartford decided to pay 100 percent of the claim for damages to the truck of Scheffe's employer. Hartford knew that Scheffe had been pinned in a totally demolished truck for approximately 45 minutes and that serious injuries required his lengthy hospitalization. They had no difficulty in gathering evidence as to the value of his claim.

They were given an authorization by Scheffe which permitted them to obtain any of his medical records. Their insured was knowledgeable and in a position to assist in negotiations. Yet there was only slight action on the part of Hartford for almost a year and a half. At that juncture it was suggested that the fact a lawyer had written on Scheffe's behalf might be responsible for the delay. The insured, Harvey, relayed that information to Scheffe, and consequently the lawyer wrote to Hartford that he was no longer an active participant and that they should contact Scheffe directly.

There followed in March of 1980 the conference in the office of Scheffe's employer which was attended by Scheffe and the Hartford adjuster. The Hartford adjuster testified that at that time he thought the insured and insurer would be very lucky to settle this claim for $100,000. Harvey then talked to the Hartford adjuster about the urgency of the matter and was assured that a settlement offer would be forthcoming. Two and a half months later Scheffe had heard nothing from Hartford and finally consulted an attorney who specialized in the plaintiffs' practice. Even then, Harvey could have delayed a takeover by the attorney if Hartford had moved as it was again requested to do. After the attorney took charge and placed a value of $350,000 on the claim, finally Hartford was moved to offer the policy limits.

As damaging as this evidence was, the witnesses for Hartford could give no reasonable explanation for the delay and the failure to respond to the opportunity to negotiate a settlement. The best that they could do was to say that during the Spring of 1980 they were waiting to learn the precise amount of reimbursement to which the compensation carrier was entitled. That was no explanation for failing to negotiate and conclude a settlement with Scheffe. It would have been simple enough at closing to see that the other insurance company obtained its part out of the settlement, or to do what Hartford finally did and make its check payable jointly to Scheffe and the other company.

Hartford's supervisors and adjusters were certainly conscious of this claim and of its gravity. Its insured, Harvey, saw to the opportunity to settle it. But Hartford's agents did very little except write a few interoffice memos. The jury was entitled to conclude that they did not care.

It may have been significant to this jury that the Hartford agents who were witnesses at this trial, even after having seen the full consequences of their inaction, testified that they had done what they were expected to do and that they had followed what was proper procedure and conduct on behalf of Hartford. When asked, none said a mistake had been made or that there had been an oversight on someone's part. That testimony could have led the jury to infer that Hartford and its representatives followed a deliberate policy of allowing similar claims to go unattended despite the consequences to their policyholders.[2]

**3. Admission of Testimony by Scheffe**

■ Hartford complains about the trial court's allowance of the testimony by Scheffe to the effect that he would have accepted $100,000 in settlement of the claim if an offer had been made prior to the time he retained his lawyer in 1980. Hartford objects to this as speculative and of no

---

**2.** It is interesting to compare the liability of an insurance company in a *Stowers* case with the liability of parties in other cases where the violated duty springs from a contract. The Texas courts have often repeated the rule that there can be no punitive damages absent the commission of a distinct tort. Where a mineral lessee violates an implied covenant of prudent operation and development of a lease, its failure to comply—no matter how oppressive—does not subject the lessee to punitive damages to the injured lessor. *Amoco Production Co. v. Alexan-* *der,* 622 S.W.2d 563, 571 (Tex.1981); but cf. *Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984) (where the owner of an executive power was subjected to punitive damages because his duty was termed a fiduciary obligation). Because the Texas courts have discussed the *Stowers* action in terms of negligence and tortious conduct, we suspect that there would be no impediment here to the award of punitive damages. And because no one has raised the point in this case, we pass it by.

**450**

probative value. Actually, the testimony by Scheffe was more than a present speculation in response to a hypothetical question. He testified that he and his wife had considered the matter and had expressly agreed and decided, prior to the time when the lawyer was retained, that they would accept $100,000 in settlement. Hartford's objection properly lies only against the weight of this testimony, and its admission was well within the discretion of the trial court. Additionally, the testimony was of little effect since it was established that Scheffe did in fact settle his claim though he obtained far less than $100,000 for his part of the settlement.

#### 4. Damages

■ Hartford objects to Texoma's recovery of attorneys' fees, saying that there is no provision in the Texas statutes for recovery of attorneys' fees against the insurance company on a *Stowers* claim. These fees were not for the payment of the costs of suit against Hartford; they were damages suffered by Texoma proximately caused by Hartford's breach of its duty to resolve Scheffe's claim without necessitating the prior lawsuit. Those damages were foreseeable and properly recoverable. *See Donnelly v. Young*, 471 S.W.2d 888, 897 (Tex.Civ.App.—Ft. Worth 1971, writ ref'd n.r.e.).

■ Finally, Hartford objects to the excessiveness of the $125,000 punitive damages. The error of which they complain in this connection is the denial of their motion for new trial. That was a decision which lay within the discretion of the trial judge, and we have often said that we are reluctant to override the decision of the district court on the issue of inadequacy or excessiveness of damages. *Thezan v. Maritime Overseas Corp.*, 708 F.2d 175, 182 (5th Cir.1983). The careful trial judge reduced the punitive damages by half, and we see no reason to fault her denial of a new trial.

The judgment of the district court is AFFIRMED.