**Joe Ed PULLIN and Sally Pullin, Plaintiffs–Appellants,**

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE CO., Defendant–Appellee.**

No. 88–2366

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 12, 1989.

Rehearing Denied July 20, 1989.

Russell H. McMains, McMains & Constant, Corpus Christi, Tex., for plaintiffs-appellants.

Sandra Sterba–Boatwright, M.W. Meredith, Jr., Meredith, Donnell & Abernethy, Corpus Christi, Tex., for defendant-appellee.

Before REAVLEY, JONES, and DUHE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The only issue on appeal, a legal one, is whether an insurance company's duty of good faith and fair dealing toward its insured may require the company to ignore per person limits of coverage when negotiating settlement of one serious bodily injury claim and several less serious ones. We find no warrant in Texas law for such a result, and we affirm the district court's summary judgment in favor of the insurer.

Appellants were insured under an automobile liability policy issued by appellee when Joe Ed Pullin was involved in an auto accident on July 20, 1980. Seven persons

were injured and asserted claims against Mr. Pullin as a result of the accident. The policy issued by the insurance company contained liability limits of $300,000 per occurrence and $100,000 per person.

Two of the personal injury claims were promptly settled for $34,000. The remaining claims belonged to five members of the Schlueter family and ranged widely in severity. It is undisputed that the claim of Lennard Schlueter, who was rendered quadriplegic with brain damage as a result of the accident, far exceeded the $100,000 per person policy limit.

Commencing in 1981, settlement offers went back and forth between the insurance company and counsel for the Schlueter family. The Schlueters' first offer called for payment of the $266,000 remaining in the policy limit, including $100,000 limit to Lennard plus amounts ranging from $6,500 to $90,000 on the other family members' claims.[1] The Schlueters' counsel acknowledged in his settlement letter that this demand overstated the amounts possibly owing to family members other than Lennard.

Appellee counter-proposed the $100,000 policy limit for Lennard and reduced amounts for his other family members. The other family members' claims were finally settled for an aggregate total of $125,000. Lennard's claim went to trial, resulting eventually in a judgment for $950,000. The insurance company paid $100,000 of the judgment as required by its liability policy, other defendants contributed $60,000 to the satisfaction, and the Pullins at last settled for $250,000.

The Pullins now seek to hold the insurance company liable for the balance due on the Lennard Schlueter judgment, alleging that the insurance company negligently failed to accept the first settlement offer by the Schlueters. The Pullins thus contend that the insurance company should have settled for inflated values for the four other Schlueter family claims, in order (a) to make available to the Schlueters additional amounts to cover Lennard's claim in excess of the $100,000 individual policy limit, and thus (b) to avoid the excess judgment later rendered in favor of Lennard. Stated conservatively, the Pullins theorize that the insurance company attorney who represented them in the Schlueter lawsuit faces a conflict of interest if he attempts to negotiate a settlement on the less damaging claims well within the per person policy limits, while leaving the insureds exposed on the serious claim that far exceeds the applicable limit. The more breathtaking proposition they espouse in their reply brief is that "the tortious responsibility of the insurer relates to its relationship with the insured, which is created by contract, but the duties in connection with the performance of that relationship are controlled by the principles of tort and not delineated by any particular policy language or exclusion. . . . tort principles determine the existence of the duty, which is not circumscribed or precluded by any particular policy term." In other words, the existence of per person bodily limits should not be a defense to an insurance company's offer to settle for less than the per occurrence limit of liability if the latter type of settlement would relieve the insureds from exposure to an excess judgment.

No Texas law supports the appellants' hypothesized duty of an insurance company where the company has repeatedly tendered the policy limits to pay an individual claim. The *Stowers* case, although relied on by the Pullins, held only that an insurer owes a duty to negotiate reasonably toward settlement up to and including the policy limits. *G.A. Stowers Furniture Company v. American Indemnity Company*, 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved). The *Stowers* doctrine does not obviously extend to require an insurance company artificially to inflate some claims so that its per person limit can be exceeded on a more serious bodily injury claim. The Pullins' argument has been specifically rejected in *Rosell v. Farmers Texas County Mutual Insurance*

---

**1.** This offer would have required a $25,000 contribution over and above the policy limit from Joe Ed Pullin individually.

*Company*, 642 S.W.2d 278 (Tex.App.—Texarkana 1982, no writ). There, the insurance company likewise refused to settle for the per occurrence policy limit the claims of a mother, not seriously injured, and her daughter, who was. At trial, the mother's damages were found well within the per person $10,000 limit, while her daughter's award far exceeded that sum. The Texas appellate court held that the insurance company was not liable for bad faith or under the *Stowers* doctrine for failure to settle, explaining as follows:

> ... [C]ourts of other jurisdictions have concluded that no breach of duty occurs where an insurer refuses to pay the full amount of its "per occurrence" limit where there are two claims, one of which may result in an excess judgment and the other of which is within its "per person" limit. [citations omitted] The $10,000.00 per person limit controls the maximum settlement an insurance company is required to offer each claimant. This discourages use of insurance policy per occurrence limits as "trust funds" to divide between various plaintiffs as they see fit or requiring insurance companies to accept "package deal" settlements from multiple claimants.[2]

642 S.W.2d at 280.

No case relied upon by the Pullins suggests that an insurer's duty of good faith may require it to pay more than the policy limits. In *Allstate Insurance Company v. Kelly*, 680 S.W.2d 595 (Tex.App.—Tyler 1984, writ refused n.r.e.), the defendant initially rejected a plaintiff's policy limit settlement offer by conditioning acceptance upon a release of claims by plaintiff's husband. Although defendant later unconditionally offered the policy limit in settlement, an offer rejected by plaintiff, the jury found defendant's initial rejection of the policy limit settlement offer to be negligent. Other cases cited by the appellants for the extent of the insurer's duty in no way purport to affect the actual limits of policy coverage. *See, e.g., Texoma Ag-Products, Inc. v. Hartford Accident & Indemnity Company*, 755 F.2d 445 (5th Cir. 1985); *Employers National Insurance Corp. v. Zurich American Insurance Company of Illinois*, 792 F.2d 517, 519 (5th Cir.1986) (dicta in footnote); *Ranger County Mutual Insurance Company v. Guin*, 723 S.W.2d 656, 659 (Tex.1987). Indeed, the Texas Supreme Court recently approved, by its "writ refused" response to an appellate court decision, the viability of per person liability policy limits. *Cradoct v. Employers Casualty Company*, 733 S.W.2d 301 (Tex.App.—El Paso 1987, writ refused) (defendant's liability was equal to policy limit for the motorcyclist killed in an accident, hence, an insurance company was not required to pay additional money to persons who suffered their own separate damages as a result of the death).

We would finally note that the Pullins disclaim any reliance on a "trust fund" theory, whereby an insurance company would agree to pay inflated amounts on some claims so that a more serious claim exceeding the per person policy limits might receive additional compensation. The disclaimer is disingenuous. To contend that an insurance company must settle by such an allocation up to the per occurrence limit implicitly assumes the integrity and reliability of the claimants who have received "inflated" amounts to devote part of their settlements to the more seriously injured person. Such a rule would almost always be confined to settlement with multiple family members. To that extent, it would arbitrarily disadvantage the insured person who had the misfortune to injure several unrelated persons. It would also arbitrarily disadvantage the person who was the sole victim of an accident covered by a policy with a per person liability limit. The duty contended for by appellants here resembles nothing so much as an *ad hoc* attempt at generosity with the insurance company's money, and, while pur-

---

**2.** Other jurisdictions have reached the same result: *Clark v. Hartford Accident & Indemnity Company*, 61 Tenn.App. 596, 457 S.W.2d 35 (Tenn.App.1970); *Roberie v. Southern Farm Bureau Casualty Insurance Company*, 185 So.2d 619 (La.App.1966), *rev'd on other grounds*, 250 La. 105, 194 So.2d 713 (1967); *Standard Accident Insurance Company of Detroit, Michigan v. Winget*, 197 F.2d 97 (9th Cir.1952).

porting to enforce a tort duty, would ignore the specific terms of the liability policy.

The judgment of the district court is AFFIRMED.